WALTER J. ROTHSCHILD, Judge.
12Pefendant, Calvin Mitchell, was charged by grand jury indictment with one count of second degree murder, in violation of LSA-R.S. 14:30.1, and one count of attempted second degree murder, in violation of LSA-R.S. 14:27 and R.S. 14:3o.!.[1] He was arraigned and pled not guilty to the charges. The matter proceeded to trial on February 15, 2011. On February *496 18, 2011, the jury returned a verdict of guilty as charged.[2]
On April 18, 2011, the trial court imposed sentence. On the second degree murder conviction, the trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On the attempted second degree murder conviction, the trial court sentenced defendant to 25 years without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently. Defendant appeals.

FACTS

On December 29, 2008, at approximately 11:00 a.m., defendant and Jules Robertson went to the house of their cousins, Craig and Kyron Cain, in LaPlace, |SL ouisiana. Also present was a friend of the Cain family, Lacohen Watson. The five men played basketball before heading to Rusty’s pool hall around 8:00 p.m. that night. A few hours later, around 10:30 or 11:00 p.m., the group left Rusty’s and proceeded to Jules’ house. When they arrived, defendant and Jules proceeded inside, while Craig, Kyron, and Lacohen waited in the vehicle.
Craig Cain testified that after defendant and Jules returned to the vehicle, the five men drove around Reserve and passed down 24th Street where they observed a green vehicle with a man in it.[3] They turned off of 24th Street and made their way up a parallel street. According to Craig, defendant and Jules then told Craig, who was driving, to stop the vehicle and let them out so that they could get some marijuana. Defendant and Jules exited the vehicle and proceeded toward 24th Street. Craig parked the vehicle, turned off the lights and engine, and waited for defendant and Jules to return. Moments later Craig, Kyron, and Lacohen heard multiple gunshots. According to Craig, when defendant and Jules returned to the car, Jules said, “I think that was a girl,” and they told Craig to bring them home.
According to Craig, when they arrived at Jules’ house, everybody exited the vehicle and proceeded inside to his bedroom. Once inside, Jules put a .45 caliber handgun on the bed and defendant put a 9 mm handgun on the bed. Craig, Kyron, and Lacohen then went home.
Ron James testified that on the night of December 30, 2008, he was seated in the driver’s seat of his parked vehicle conversing with his friend, Nekeshia Joseph, in the passenger seat. While they talked, two hooded men walked by the vehicle and then turned around to come back to the vehicle. This prompted Ms. Joseph to ask Mr. James, “You know those guys? They coming back.” When Mr. James |4looked up, defendant was standing at his window with a gun and told Mr. James, “Give it up.” Mr. James testified that he recognized the gunman as defendant because he knew him “like family,” since defendant’s brother was Mr. James’ cousin. The other individual was on the passenger side and Mr. James was able to see that he had dreadlocks. Defendant then said, “Duty, that’s Chill.”[4] At this moment, the gunman on the passenger side started shooting. This prompted Mr. James to attempt *497 to drive away. As he pulled away from the curb, the gunman followed the vehicle and continued to shoot. Once the vehicle was out in the middle of the street, defendant started shooting. As a result of the shooting, Mr. James sustained a gunshot wound to his leg and abrasions to his face from broken glass. Ms. Joseph sustained twelve gunshot wounds and died as a result.
Nearly a week later, on January 5, 2009, Mr. James identified defendant from a photographic lineup as the person who shot him from the driver’s side. He testified that when he was shown the lineup, he was able to immediately identify defendant and indicated, “Calvin’s the one that shot me.”
On August 12, 2009, defendant, who was incarcerated in Georgia on an unrelated armed robbery charge, met with St. John the Baptist parish detectives. According to Detective Walter Stevens, defendant was advised of his rights, indicated he understood them, executed a waiver thereof, and agreed to give a statement. At first he denied any involvement in the shooting, but he later admitted that Mr. James’ version of events was accurate. He stated that he used a 9 mm weapon and that he got off two shots before it jammed.

LAW AND DISCUSSION

In his first assignment of error, defendant argues that his convictions violate his right to due process of law because they were obtained by non-unanimous jury | ¿verdicts. He contends that LSA-C.Cr.P. art. 782, which permits non-unanimous jury verdicts, is unconstitutional. He acknowledges the precedent of Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), in which the United States Supreme Court held that non-unanimous jury verdicts in state felony trials are constitutional. However, he argues that subsequent developments in the Supreme Court’s jurisprudence calls that holding into serious question, citing Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and McDonald v. City of Chicago, — U.S. —, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). Defendant further acknowledges that the Louisiana Supreme Court has rejected the argument that a non-unanimous verdict violates the Fifth, Sixth or Fourteenth Amendments of the U.S. Constitution. See State v. Bertrand, 08-2215 (La.3/17/09), 6 So.3d 738. However, he still maintains that the non-unanimous verdicts violated his right to due process of law.
LSA-C.Cr.P. art. 782(A) provides in pertinent part: “Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.”
The Louisiana Supreme Court has previously discussed and affirmed the constitutionality of LSA-C.Cr.P. art. 782. In State v. Jones, 381 So.2d 416, 418 (La.1980), the Court ruled that LSA-C.Cr.P. art. 782 did not violate the Sixth and Fourteenth Amendments. Later, in State v. Simmons, 414 So.2d 705, 707 (La.1982), the Court found that LSA-C.Cr.P. art. 782 did not violate either the Fifth or Fourteenth Amendments. In Bertrand, OS-2215 at 5-8, 6 So.3d at 741-43, the Court again affirmed the statute’s constitutionality-
As an intermediate appellate court, this Court is obliged to follow the precedent established by the Louisiana Supreme Court. State v. Thomas, 10-220, pp. 12-13 (La.App. 5 Cir. 11/9/10), 54 So.3d 678, 686, writs denied, 10-2758 (Laj4/25/11),fi 62 So.3d 89 and 10-2752 (La.5/20/11), 63 So.3d 974. This Court has consistently followed the Louisiana Supreme Court’s jurispru *498 dence on this issue. See, e.g., State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469; State v. Wade, 10-997 (La.App. 5 Cir. 8/30/11), 77 So.3d 275; State v. Jacobs, 07-887, pp. 81-83 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 591-92, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468.
Defendant nonetheless argues that this issue should be reconsidered in light of recent United States Supreme Court decisions that call Apodaca into question. Specifically, he cites McDonald v. City of Chicago, — U.S. —, 130 S.Ct. 3020, 3021, 177 L.Ed.2d 894 (2010) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). However, the United States Supreme Court did not overturn Apodaca in either of these decisions. In fact, the McDonald Court stated: “The Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials.” McDonald, 130 S.Ct. at 3035 n. 14 (Emphasis supplied).
Accordingly, considering that the United States Supreme Court and the Louisiana Supreme Court have held that a unanimous jury verdict is not required in state criminal trials, we find that this assignment of error is without merit.
In defendant’s second assignment of error, he argues that the trial court erred by admitting evidence of other crimes or bad acts, in violation of LSA-C.E. art. 404(B) and State v. Prieur, 277 So.2d 126 (La.1973). Specifically, he contends that testimony regarding defendant’s involvement with the drug trade, testimony regarding a pending armed robbery charge, and testimony regarding claims that defendant was intimidating or threatening witnesses were all impermissible references to evidence of other crimes or bad acts, and were inadmissible as such.
|7Pefendant first points out that testimony was solicited from Terrel Hutchinson that defendant bought drugs from Ron James. On cross-examination by the co-defendant’s attorney regarding a statement given by Mr. Hutchinson, the following occurred:
Q: Okay. And then you said that, “Calvin told me he dealt, he dealt with Ron [James] as buying drugs from him.”
A: Right.
Q: Correct?
A: That’s, if that’s what it says, yes.
Q: Okay. And then you said, “He knew him like that, you know what I’m saying, like buying drugs from him.”
A: Right.
In addition, on redirect examination by the prosecutor, the prosecutor stated: “When you were talking to the detectives and they were questioning you — Talking about the dealing of, the purported dealing of drugs by Ron James. Did Calvin, in your conversation, provide you with information about Ron James?”
Defendant also points out that testimony was solicited from Detective Walter Stevens regarding defendant’s incarceration in Georgia on an armed robbery charge. On direct examination by the State, the detective stated: “[S]omebody called us and said that they believed Calvin was incarcerated in DeKalb County jail on an armed robbery charge, or whatever. So I called down there and, in fact, it was true.”
Defendant did not lodge a contemporaneous objection to the testimony of Mr. Hutchinson or Detective Stevens, nor did he request an admonition or a mistrial pursuant to LSA-C.Cr.P. arts. 770 and 771. LSA-C.Cr.P. art. 841(A) provides: “An irregularity or error cannot be availed of after verdict unless it was objected to at *499 the time of occurrence.” To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with |sthe occurrence of the alleged error as well as the grounds for the objection. State v. Enclard, 03-288 (La.App. 5 Cir. 6/19/03), 850 So.2d 845, 853.
In the instant case, because defendant did not contemporaneously object to the testimony of Mr. Hutchinson or Detective Stevens, we find that these issues were not properly preserved for this Court’s consideration.
Defendant also alleges that various impermissible references were made in regard to defendant intimidating or threatening witnesses. During the State’s redirect examination of Terrel Hutchinson, the following colloquy occurred:
Q: How do you, I mean, how do you feel about testifying today and telling, and telling your story today? I mean, is this easy for you?
A: No, it’s not easy. And I very well could be killed for this. But I don’t care because it wasn’t my fault. I didn’t do it. I didn’t have nothing to do with it. And people been trying to kill me for the past two years.”
The co-defendant’s counsel then objected on the grounds of relevance. During the State’s direct examination of Craig Cain, the following occurred:
Q: —it is hard for you. Do you feel under threat from anyone?
A: Not from no one in here but from the, you know, outside world, whatever. You know, I feel I’m putting my life in jeopardy being up here.
Q: Okay.
A: I mean, they stopping me from saying what need to be said.
Q: So with your life being in jeopardy you’re not going to get — You’re telling— It’s because you’re telling the truth, right?
A: Excuse me, sir?
Q: You feel jeopardized because you’re telling the truth or because you’re telling a lie?
A: Because I’m telling the truth.
Q: Because you’re telling the truth. Because of the truth you’re being threatened, right?
A: Yes.
The prosecutor later stated: “I understand these are your cousins and this is hard for you to testify.”
During the State’s direct examination of Kyron Cain, the following occurred:
|9Q: Okay. Kyron, you, you recently received a phone call, didn’t you, let’s say Tuesday, Tuesday night?
A: Yes, sir.
Q: I see. And you received a phone call. And who was on the other end of that phone conversation Tuesday night?
(No response)
Q: You don’t remember who was on the phone conversation that Tuesday night?
A: I don’t remember.
Q: You don’t recall receiving a three-way call where Mr. Jules Robertson and his sister was on the phone with you Tuesday night?
THE COURT: What’s your answer, sir?
A: Yes, sir.
Q: You do recall receiving a phone conversation Tuesday night?
At this point counsel for co-defendant objected and moved for a mistrial on the basis that the prosecutor insinuated that Jules Robertson was engaged in witness intimidation. Defendant’s counsel then *500 joined in the motion for mistrial. The trial court denied the motion.[5]
The prosecutor continued his direct examination of Kyron Cain as follows:
Q: Were you ever threatened by Jules Robertson?
A: No, sir.
Q: Were you threatened by his sister? A: No, sir.
Q: Have you ever been or have they ever threatened you?
A: No, sir.
The record before us reveals that the alleged references to witness intimidation complained of by defendant pertained to co-defendant, Jules Robertson. In the various foregoing excerpts, there is not one reference to defendant.
In State v. Carter, 07-270 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, this Court confronted a situation in which it was alleged that impermissible references | j(|were made to other crimes evidence. The alleged references occurred while the co-defendant was on the stand. This Court determined that “none of the prosecutor’s questions or the codefendant’s answers unmistakably pointed to evidence of another crime committed by the defendant.” State v. Carter, 07-270, p. 8 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, 201. Thus, the court concluded that the trial court did not err in denying the defendant’s motion for mistrial. Id., 07-270 at 9, 976 So.2d at 202.
In the instant case, neither the prosecutor’s questions nor the witnesses’ responses unmistakably pointed to evidence of another crime committed by defendant. Accordingly, we find that the trial court did not err in denying defendant’s motion for a mistrial.
Even if impermissible references were made to other crimes, any such error is subject to a harmless error analysis. State v. Santos, 09-789, p. 14 (La.App. 5 Cir. 4/13/10), 40 So.3d 167, 175, writ denied, 10-1080 (La.11/24/10), 50 So.3d 828. An error is harmless when the verdict is surely unattributable to the error. Id.
In the instant case, considering the other incriminating evidence against defendant, the verdict was surely unattributable to the alleged other crimes evidence. Defendant confessed to his involvement in the shooting, was identified by the victim as one of the gunmen, and was placed at the scene by the testimony of three witnesses. Accordingly, even if impermissible other crimes evidence was permitted, the admission was harmless. Accordingly, we find that this assignment of error has no merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors requiring corrective action.
*501 11 ¡DECREE
For the foregoing reasons, we affirm defendant’s conviction and sentence.

AFFIRMED

. On April 6, 2009, a St. John the Baptist parish grand jury issued an indictment charging defendant with first degree murder in violation of LSA-R.S. 14:30. On October 5, 2009, the State amended the indictment, reducing the charge to second degree murder in violation of LSA-R.S. 14:30.1. On February 7, 2011, the State again amended the indictment, adding a charge of attempted second degree murder in violation of LSA-R.S. 14:27:30.1.

. Co-defendant, Jules Robertson, was also convicted of both charges.

. In his statement to police during an interrogation on January 15, 2009, Craig Cain stated that as they passed the vehicle, defendant said, "Look at that n* * * *r in that car right there.” Jules said, "I gotta shoot 'em to stop f* * * * *g with me 'cause I don't like nobody from Reserve.”

.The record reflects that "Chill” is Mr. James’ nickname and "Duty” is Jules' nickname.

. Counsel filed an emergency writ with this Court seeking review of the trial court’s denial of the motion for mistrial. However, this court denied relief with the following disposition:
In this writ application, defendant alleges that the trial court erred in denying his motion for mistrial, made after questioning by the district attorney which defendant alleges was an impermissible reference to other crimes. The trial court, in denying the motion, found that the testimony in question was not an impermissible reference to other crimes. On the showing made, we find no error in the trial court's ruling. Relator may re-urge this allegation on appeal in the event of conviction. State v. Robertson, 11-174 (La.2/18/11) (unpublished writ disposition).