ROBERT M. MURPHY, Judge.
^Defendant, Gregory Reaux, appeals his convictions and sentences for three counts of armed robbery, in violation of La. R.S. 14:64. The trial court sentenced defendant to ninety-nine (99) years imprisonment at hard labor on each count, to be served without the benefit of parole, probation or suspension of sentence. The trial court further ordered these sentences to run consecutively with each other, and with defendant’s sentence imposed for three counts of armed robbery in St. Tammany Parish, which amounted to a total term of 297 years. For the reasons that follow, we affirm defendant’s convictions and sentences, and remand the matter to the trial court for correction of an error patent as noted herein.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On July 23, 2009, defendant was charged by bill of information with three counts of armed robbery in violation of La. R.S. 14:64, for the armed robberies of Stephanie Ashley (count one), Nancy Pichoff (count two), and Daniel[1] Gaudet (count three).
|4On August 5, 2010, the State filed a notice of intent to use evidence of other crimes under La. C.E. art. 404(B), as to evidence of other similar crimes committed by defendant to show his knowledge, intent, system and motive. On October 5, 2010, defendant filed omnibus and pre-trial motions, including a motion to suppress statements, evidence, and identification. After numerous continuances, and prior to any ruling from the trial court on his motion to suppress, defendant obtained new counsel and filed a second omnibus motion on May 31, 2012, which included a second motion to suppress evidence, confession, statements and identification, and a motion for probable cause for initial stop and arrest. However, defendant subsequently withdrew this motion to suppress confession and statements, as reflected by the minute entry of February 20, 2013. On April 1, 2013, defendant filed a motion in limine to exclude three statements he made in custody on the grounds that the *947 statements were not pertinent to the case and would be highly prejudicial to defendant.
On July 22, 2013, the trial court held a hearing on the aforementioned pre-trial motions, wherein it granted the State’s notice of intent to use other crimes evidence under La. C.E. art. 404(B). The trial court also granted in part and denied in part defendant’s motion in limine to exclude his statements-, and denied defendant’s motion for probable cause for the initial stop and arrest of defendant. On July 23, 2013, the matter proceeded to trial for a two-day jury trial.
At trial, the State presented evidence of two separate armed robberies of GameSr top stores located in Jefferson Parish: (1) an April 12, 2009 armed robbery of Nancy Pichoff and Stephanie Ashley at the Gam-eStop located on Manhattan Boulevard; and (2) an April 19, 2009 armed robbery of Daniel Gaudet at the GameStop located on Barataría Boulevard.
IfiMs. Pichoff s testimony was presented to the jury via videotaped testimony. Ms. Pichoff testified that on Easter Sunday in April of 2009, she and her co-worker Stephanie were working at the GameStop on Manhattan Blvd. She testified that as she was locking the door for closing time around 6:00 p.m., a tall man armed with a box cutter, wearing a white t-shirt, and a towel covering his face walked into the store and told her to “get behind the register.” Ms. Pichoff walked behind the register where Stephanie was already standing.
Once she was behind the register, the perpetrator ordered Ms. Pichoff to open the drawer as he held a box cutter; however, she was unable to open her register because she forgot her password. As a result, Stephanie opened both of the store’s registers and handed all of the-bills to the perpetrator, which he then placed into a mesh backpack. Ms. Pichoff also testified that the perpetrator took all of the money from the store’s safe, as well as other items including Wii and PlayStation 3 game consoles and games, all of which he placed into the mesh backpack, with the exception of the PlayStation 3 console. She explained that although the perpetrator did not physically touch anyone in the store, he threatened her with the box cutter. Before leaving the store, Ms. Pichoff testified that the perpetrator ordered her and Stephanie to walk to the back of the store as he exited, at which point, she locked the front door and Stephanie called the police. Ms. Pichoff also stated that the store was not equipped with video-surveillance cameras, and that she told the officers that she would not be able to identify the man who robbed the store because he was covered from head to toe.
At trial, Detective Russell Varmall of the Jefferson Parish Sheriffs Office Robbery Division testified that he was the lead detective who investigated the April 12, 2009 robbery of the GameStop on Manhattan Blvd. Detective Varmall spoke separately to the two victims, Ms. Ashley and Ms. Pichoff. He testified that |fihe obtained a physical description of the perpetrator as a tall black male wearing a white shirt, grey sweatpants, a dark hat, a cloth covering the lower portion of his face, and a glove, and carrying a blue box cutter and a black mesh backpack. Detective Var-mall explained that he did not have any named suspects or a suspect vehicle at that time.
The State called Daniel Gaudet, a former store manager of the GameStop located on Barataría Blvd., to testify at trial as to the robbery at that location. Mr. Gau-det testified that on April 19, 2009, he was working at the GameStop with his co-' worker Samantha Nicholson close to closing time at about 5:30 p.m., when the perpetrator approached the counter and told him “Put the money in the bag.” Mr. *948 Gaudet testified that the perpetrator pulled out a box cutter with a blue handle. Mr. Gaudet then opened both registers and put all of the bills into the perpetrator’s bag, and the perpetrator left. He testified that customers were present in the store during the robbery, but stated that he did not believe that the customers were aware of the robbery at the time it occurred.
Mr. Gaudet testified that the perpetrator was a tall man armed with a box cutter with a blue handle, wearing a dark hat, white t-shirt and a white cloth over his face. Mr. Gaudet gave a statement to the officers who arrived on the scene, and provided them with a copy of the store’s video-surveillance camera, which was played for the jury. Although Mr. Gaudet testified that he was unable to identify the perpetrator of the robbery, he testified that there was nothing “inconsistent” with defendant’s physical characteristics and with those of the perpetrator.
The State also called Detective Nathan Penton of the Jefferson Parish Sheriffs Office to testify about the robbery of the GameStop on Barataría Blvd. Detective Penton testified that on April 19, 2009, he responded to a call for service at the Gam-eStop on Barataría Blvd., where two Gam-eStop employees informed |7him that they had been robbed. Detective Penton obtained a description of the suspect from them, which he described as a black male, approximately 6 feet and 3 inches tall and weighing between 180 pounds to 220 pounds, with moles or some type of marks around his eyes, wearing a blue baseball cap with white lettering, a white shirt, and grey sweatpants. His eyes were brown and his hair was dark brown. He testified that both victims provided him with the same basic description, but that the female victim gave a more detailed description.
Detective Varmall was assigned as the follow-up detective on the Barataría Blvd. GameStop robbery due to the similarities between the description of the suspect and the robbery, and the description of the suspect and the robbery of the Manhattan Blvd. GameStop. Specifically, Detective Varmall believed that the two robberies were connected due to the fact that both robberies occurred near closing time and the similar description of the suspect.
Detective Varmall testified that another detective in his unit contacted GameStop’s loss prevention officer for the Southeastern Louisiana region, and determined that there had been multiple robberies of Gam-eStop stores located on the Northshore of Louisiana, including Walker, Denham Springs, Covington, and Slidell. After his supervisor contacted the St. Tammany Parish Sheriffs Office, Detective Varmall determined that the St. Tammany Parish GameStop armed robberies were consistent with the Jefferson Parish robberies. On April 20, 2009, Detective Varmall received word from the St. Tammany Sheriffs Office that they had arrested a suspect described as a black male at a GameStop in Mandeville. The suspect was later identified as defendant, Gregory Reaux.
Detective Varmall stated that he and Sgt. John Carroll arrived at the St. Tammany Investigations Bureau at approximately 11:30 p.m. to conduct an interview of defendant. He explained that defendant had already been advised of |Rhis Miranda[2] rights and questioned by the St. Tammany Parish Sheriffs Office. Detective Varmall interviewed defendant for approximately one to one and a half hours, during which time defendant was cooperative, but denied any involvement in the robberies. Detective Varmall testified that he never threatened defendant to confess, physically touched him, or offered *949 him anything of value in exchange for his confession.
Detective Varmall ended the interview and left to assist the St. Tammany officers in executing a search warrant of defendant’s residence in Hammond, Louisiana. However, while en route to defendant’s residence, he received a call from the St. Tammany Parish Sheriffs Office that defendant confessed to both robberies in Jefferson Parish. Once he returned to the St. Tammany Investigations Bureau, Detective Varmall gave defendant a still photograph of the video surveillance taken from the robbery of the Barataría Blvd. Game Stop, which defendant signed identifying himself as the perpetrator in the photograph.
The State called Lieutenant Patrick McCormick of the St. Tammany Parish Sheriffs Office to the stand. Lieutenant McCormick testified that on the day of defendant’s April 20, 2009 arrest, he and Deputy Noel Forrester were conducting surveillance of the GameStop located in Mandeville, as it was the only one of the three GameStops in St. Tammany Parish that had not yet been robbed. He was given a description of the suspect as a tall black male armed with a box cutter, wearing a backpack, a baseball cap, a white t-shirt and grey sweatpants. He stated that they arrived at the GameStop near the store’s closing time because the other robr beries had occurred near closing.
Lieutenant McCormick testified that he observed a tall black male, later identified as defendant, wearing a white t-shirt, light grey pants and a baseball cap |9walking through a service alley between the Gam-eStop and a nearby dental office. He observed defendant peer into the GameStop area, and then step back towards the dental office and out of the lit area when someone exited one of the businesses. He described defendant’s behavior as “odd.” When Lieutenant McCormick’s Nextel began beeping, defendant realized he was there. He explained that defendant gave a “deer in headlights” expression, then turned and briskly walked away.
Lieutenant McCormick then contacted Deputy Forrester, who detained and questioned defendant at a nearby red light. As he approached Deputy Forrester and defendant, he observed defendant shifting, which he. explained indicated a fight or flight response. Based on this response, Lieutenant McCormick placed defendant in handcuffs and advised him of his Miranda rights. Lieutenant McCormick also located defendant’s vehicle, a white Monte Carlo, at a nearby gas station. He explained that defendant’s vehicle matched the description of the vehicle connected to the previous GameStop robberies.
Deputy Forrester testified that he was present at the time of defendant’s arrest near the GameStop in Mandeville on April 20, 2009. When Deputy Forrester exited his vehicle, defendant was behind the GameStop, and he asked defendant if he would come speak with him. Defendant agreed to speak with him, but appeared nervous. Deputy Forrester explained that defendant appeared to “dance” back and forth on his feet and look around for a place to flee. At that time, Lieutenant McCormick walked from behind defendant and placed him in handcuffs. As Lieutenant McCormick located defendant’s vehicle, Deputy Forrester conducted a pat-down search of defendant and recovered a blue box cutter that fell from defendant’s waistband onto the ground. Deputy For-rester identified a black mesh backpack recovered from defendant at the time of his | inarrest, as well as the box cutter he recovered during the pat-down of defendant. Lieutenant McCormick placed defendant under arrest for attempted armed robbery, and defendant was later placed *950 under arrest for the prior GameStop robberies in St. Tammany Parish.
The State also called Lieutenant George Cox of the St. Tammany Sheriffs Office to testify as to the robbery of a GameStop located in Covington, Louisiana on April 18, 2009. Lieutenant Sean Mclain of the Slidell Police Department also testified on behalf of the State as to the robbery of a GameStop located in Slidell, Louisiana, on April 17, 2009. Lieutenant Cox and Lieutenant Mclain both explained that when they received their respective cases on April 20, 2009, they were both made aware of similar robberies of GameStop locations throughout the New Orleans area and in Walker, Louisiana. They both stated that the method of operation and the physical characteristics of the perpetrator were almost identical, which suggested that the robberies were committed by. the same person. Lieutenant Mclain further stated that the officers of the Slidell Police Department observed the perpetrator walking from the GameStop in Slidell to a white Monte Carlo on a surveillance video from a nearby Academy Sports.
On the evening of April 20, 2009, Lieutenant Cox and Lieutenant Mclain were both informed that a suspect had been taken into custody for an attempted robbery of a GameStop. They first encountered defendant in the interview room at the Major Crimes office in Covington at approximately 9:30 p.m. that evening. Lieutenant Cox advised defendant of his Miranda rights by reading a standardized Statement of Miranda Rights/Waiver of Rights Form to defendant, which defendant signed. Lieutenant Cox testified that he did not subject defendant to threats, force, pain, starvation or sleep deprivation. Lieutenant Mclain also testified that he did not threaten defendant. Lieutenant Cox took breaks and | ¶ 1 offered breaks to defendant, including offers of food and water, which defendant accepted.
Lieutenant Cox and Lieutenant Mclain both stated that defendant initially denied any involvement or knowledge of the Gam-eStop robberies in St. Tammany Parish. After the interview had been conducted for approximately an hour, Detective Varmall and Sergeant Carroll of the Jefferson Parish Sheriffs Office interviewed defendant for approximately one and a half to two hours, during which time defendant continued to deny any involvement.
As the other officers left to execute search warrants of defendant’s white Monte Carlo and of his residence in Hammond, Lieutenant Cox and Lieutenant Mclain continued to question defendant. They also both stated that defendant stated that he had obtained a Bachelor’s Degree and was working toward a Master’s Degree. In addition, Lieutenant Cox and Lieutenant Mclain testified that for the first time, they informed defendant of the locations where the robberies occurred, that they believed all of the robberies were committed by the same person, showed defendant still prints of the suspect involved in the Jefferson Parish robbery, and informed him that the officers were seeking a search warrant for defendant’s vehicle. Lieutenant Cox and Lieutenant Mclain both stated that they did not present defendant with any specific details at that time, but that defendant asked what would happen with the different jurisdictions if he was in fact guilty. Eventually, defendant stopped answering their questions.
Lieutenant Cox and Lieutenant Mclain stated that they chose to discontinue the interview and began walking defendant to the jail to be booked with attempted robbery, at which point, defendant stated that he wanted to tell the truth and tell everything. Lieutenant Cox and Lieutenant Mclain stated that they then returned defendant to the interview room where they *951 again advised him of his Mirandafrights through the recorded statements form, which defendant signed. Defendant then confessed to all of the GameStop robberies, including the two Jefferson Parish robberies, and agreed to give a recorded statement. Defendant explained that each robbery was committed in the same manner, while carrying a backpack and box cutter, and wearing a mask. Defendant’s recorded statement began at 4:07 a.m. on April 21, 2009 and concluded at about 4:42 a.m. that same day.
After defendant was transported to the Slidell jail, a correctional officer informed Lieutenant Mclain that defendant wanted to speak with him. Lieutenant Mclain stated that he advised defendant of his Miranda rights, and defendant signed another taped statement form indicating that he understood his Miranda rights. Defendant then provided a second recorded statement on April 21, 2009, wherein he claimed that a second named individual was involved in the robberies. However, Lieutenant Mclain testified that there was nothing in his investigation that suggested a second subject was involved. After Lieutenant Cox informed defendant that he would investigate the second person involved, defendant recanted his second recorded statement and provided a third recorded statement on April 22, 2009, acknowledging that he was the only person involved. Prior to giving his third recorded statement, defendant executed another taped statement form indicating that he understood his Miranda rights.
In addition, Lieutenant Cox testified that the following items were recovered from defendant’s vehicle as a result of the search warrant of his vehicle: Nintendo Wii points cards, a box from the GameStop store located in Walker, Louisiana, and a Wii videogame. Lieutenant Cox stated that defendant was also placed under arrest for the Covington, Slidell, and Jefferson Parish robberies.
At the conclusion of trial on July 24, 2013, the twelve-person jury unanimously found defendant guilty as charged on all three counts of armed | ^robbery. On September 4, 2013, defendant filed a pro se motion for new trial, which was denied on that same date. After waiving delays, defendant was sentenced on September 4, 2013 to a term of 297 years imprisonment at hard labor, which included 99 years imprisonment at hard labor on each count, to run consecutively with each other and with the sentence defendant was currently serving in St. Tammany Parish. The trial court further ordered the sentences to be served without benefit of parole, probation, or suspension of sentence. Defendant now appeals his convictions and sentences.
ASSIGNMENTS OF ERROR
On appeal, defendant raises the following five counseled assignments of error, plus one pro se assignment of error:
1. The evidence presented at trial, when viewed in the light most favor- ■ able to the prosecution, was insufficient for any rational trier of fact to have found defendant guilty of three counts of armed robbery.
2. Defendant’s statement was not freely and voluntarily given because it was the result of duress and sleep deprivation after six hours of constant interrogation.
3. The trial court erred in allowing the jury to hear inadmissible “other crimes” evidence where the State failed to meet its burden of proof under Prieur[3] and La. C.E. art. 404(B).
4. The trial court erred in allowing a baseball cap not properly admitted *952 into evidence to be published to the jury-
5. Defendant’s sentence is constitutionally excessive.

Pro Se Assignment of Error:

6. The trial court erred in denying defendant’s motion to suppress evidence seized pursuant to the initial stop, arrest and pat-down search.
luLAW AND DISCUSSION

Assignment of Error Number One:

In his first assignment of error, defendant argues that the evidence presented at trial was insufficient for any rational trier of fact to find him guilty of the three counts of armed robbery. Specifically, defendant contends that the State failed to prove that he committed the armed robbery of Nancy Pichoff because Ms. Pichoff testified that she was unable to open her cash register. As such, defendant claims that nothing was taken from Ms. Pichoff during the robbery, and that at most, he could only be found guilty of the attempted robbery of Ms. Pichoff.
In addition, defendant contends that the State failed to prove that he committed the armed robbery of Stephanie Ashley. Defendant asserts that Ms. Pichoff was the only witness to testify regarding the armed robbery of Ms. Ashley, and she only referred to her co-worker as “Stephanie” because she was unable to remember Stephanie’s last name. Defendant contends that the State failed to introduce any evidence to show that this “Stephanie” was Stephanie Ashley, and no one named Stephanie testified at trial.
In response, the State contends that the evidence was sufficient to convict defendant of separate offenses of each victim of the robbery of the GameStop on Manhattan Boulevard because where there is a single armed robbery of dual victims, the State may charge a defendant with separate offenses for each victim. The State argues that Ms. Pichoffs testimony and defendant’s confession were sufficient to convict defendant of the armed robbery of Ms. Pichoff.
As for the robbery of Stephanie Ashley, the State further argues that the testimony of an eyewitness is sufficient to convict a defendant of armed robbery against a victim that did not testify. The State asserts that Ms. Pichoff testified that “Stephanie” opened both registers and handed all of the bills to the perpetrator. 11RAIthough Ms. Pichoff was initially unable to remember Stephanie’s last name, the State contends that she recognized her last name later when the prosecutor referred to Stephanie as “Ashley.” The State further asserts that Detective Yarmall named “Ms. Ashley” and Nancy Pichoff as the two victims he spoke to at the crime scene.
According to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the appropriate standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Alexander, 12-836 (La.App. 5 Cir. 5/23/13), 119 So.3d 698, 702, writ denied, 13-1981 (La.3/21/14), 135 So.3d 614 (citing State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122). Rathér, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.; Jackson, supra at 319, 99 S.Ct. 2781.'
*953 Evidence may be either direct or circumstantial. Alexander, supra at 702. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. Id. (citing State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833). When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Id. (citations omitted). All evidence, 11fiboth direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
To support a conviction for the offense of armed robbery under La. R.S. 14:64, the State must prove beyond a reasonable doubt (1) the taking (2) of anything of value (3) belonging to another from the person of another or that is in the immediate control of another, (4) by use of force or intimidation (5) while armed with a dangerous weapon. State v. Preston, 09-856 (La.App. 5 Cir. 5/25/10), 40 So.3d 1052, 1058, writ denied, 10-1492 (La.1/14/11), 52 So.3d 900 (citing La. R.S. 14:64). Property that is taken is considered under the victim’s control when the victim could have prevented the taking had he not been subjected to the robber’s violence or intimidation. State v. Martin, 07-1035 (La.App. 5 Cir. 10/28/08), 996 So.2d 1157, 1160. The State need not prove that the property taken was owned by the victim but only that the accused was not the owner, and the victim had a greater right to the item than the accused. Id.
In State v. Cittadino, 628 So.2d 251, 255 (La.App. 5 Cir.1993), this Court stated the following:
The money taken was not taken from the victim’s person but rather it was taken from a cash register within the victim’s immediate control. The victim was the cashier on duty at the time of the alleged robbery. In a robbery case, it is the felonious taking that is the issue more than the perfect title of the alleged owner. Therefore, it is the victim’s greater possessory interest in the property stolen vis-a-vis the accused that is key in proving a robbery.
(citing State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993) (holding that a rational juror could conclude beyond a reasonable doubt that the defendant committed the crime of armed robbery against the supervisor who stood behind the counter with another employee and instructed that employee to comply with the defendant’s demand to turn over money from cash register).
|17In the present case, defendant was charged with three counts of armed robbery, including the armed robbery of Stephanie Ashley (count one), and Nancy Pi-choff (count two). Ms. Pichoff testified that the man who committed the robbery held a box cutter as he ordered her to open the cash register. She explained that she was unable to open her register because she was nervous and forgot her password. Ms. Pichoff testified that her co-worker, “Stephanie,” opened the registers and removed all of the money from both registers and the safe and handed it to the perpetrator.
We find that the evidence shows that at the time of the robbery, the money in the cash register was in the control of Ms. Pichoff and Ms. Ashley. Because the money was taken from the cash register within Ms. Pichoffs immediate control, and given her status as an employee of GameStop, she “could have prevented [defendant’s] taking had [s]he not been subjected to [defendant’s] violence or intimidation.” See Martin, supra. Therefore, *954 we find that a rational juror could have concluded beyond a reasonable doubt that defendant took- something of value from Ms. Pichoffs immediate control as defined by La. R.S. 14:64, despite the feet that she could not open the register after she forgot her password. Accordingly, we find that the evidence is sufficient to find defendant guilty of the armed robbery of Ms. Pichoff as set forth in count two of the bill of information.
Furthermore, we find that the evidence is similarly sufficient to find defendant guilty of the armed robbery of Stephanie Ashley. The record shows that Detective Varmall testified that he identified two victims of the robbery of the GameStop on Manhattan Blvd. as Ms. Ashley and Nancy Pichoff, both of whom were employees of the GameStop. Further, Ms. Pichoff consistently referred to her co-worker who opened the registers on the evening of the robbery as Stephanie, but initially stated that she could not recall Stephanie’s last name. Later, when Ms. |1sPichoff was asked during her testimony whether she observed “Ashley” open the cash register, Ms. Pichoff responded in the affirmative. Moreover, although Ms. Ashley did not testify at trial, this Court has found that the testimony of other eyewitnesses is sufficient to establish that a defendant committed an armed robbery of a victim who does not testify. See State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 910, writ denied, 04-2220 (La.1/14/05), 889 So.2d 266.
Finally, we note that the State also presented defendant’s recorded statement confessing to the armed robberies that occurred at the GameStop on Manhattan Blvd., wherein he admitted to committing a robbery upon two female employees at the GameStop located on Manhattan Boulevard on Easter. Given the above evidence, when viewed in a light most favorable to the prosecution, we find that a rational trier of fact could have concluded that the armed robbery victim that Ms. Pichoff referred to in her testimony as “Stephanie” and “Ashley,” was the same “Stephanie Ashley” identified as the armed robbery victim in count one of the bill of information.
Although defendant has alleged in his first assignment of error that the evidence was insufficient to find him guilty of all three counts of armed robbery, we note that defendant has failed to brief this issue as it relates to count three, the armed robbery of Daniel Gaudet. Because any assignment of error that is not briefed is considered abandoned on appeal, we therefore deem this assignment abandoned. State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 757-78, writ denied, 08-2432 (La.1/30/09), 999 So.2d 754. Assignment of Error Number Two:
In his second assignment of error, defendant contends that the State failed to affirmatively show that his confession was given freely and voluntarily. Specifically, defendant asserts that the officers continuously interrogated him for 113more than six hours between approximately 9:30 p.m. and 4:00 a.m., which resulted in sleep deprivation. Defendant argues that he was subjected to treatment designed to affect his body or mind to compel a confession in violation of La. R.S. 15:452, and that the State failed to carry its burden under La. R.S. 15:451 showing that his 'confession was free of fear, duress, intimidation, menaces, threats, inducements or promises. Defendant also claims that his trial counsel failed to file a motion to suppress his confession.
In response, the State contends that defendant has failed to preserve this issue for appellate review. The State notes that defendant is mistaken in his assertion that he did not file a motion to suppress his confession. Rather, the State contends *955 that he filed two such motions, the first of which was never ruled upon and second motion was voluntarily withdrawn by defense counsel. Nevertheless, the State contends that it demonstrated that defendant’s confession was given freely and voluntarily and was not the product of fear, duress, intimidation, menace, threats, inducements, or promises.
Contrary to defendant’s assertion, our review of the record shows that defendant filed an omnibus motion, including a motion to suppress statements, on October 5, 2010, and then filed another omnibus motion, including a motion to suppress evidence, confession and identification on May 31, 2012. In defendant’s October 5, 2010 motion to suppress statements, he sought to suppress his statements on the grounds that the statements were obtained illegally and unlawfully. However, the record does not reflect a ruling on this motion, or an objection from defendant as to the trial court’s failure to rule on the motion. When a defendant does not object to the trial court’s failure to rule on a motion prior to trial, the motion is considered waived. State v. Lewis, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128, 132 n. 1, writ denied, 13-1926 (La.4/17/14), 138 So.3d 618. Therefore, we find that defendant’s first motion to suppress statements is waived.
Subsequently, defendant retained new counsel who filed his May 31, 2012 motion to suppress confession, seeking to suppress defendant’s confession and statements based upon the allegation that they were made under the influence of threats, duress, fear and intimidation and without being advised of his rights. However, the February 20, 2013 minute entry reflects that defendant appeared with counsel and withdrew “[t]he Defense’s Motion to Suppress Statement.” Defendant now argues on appeal that his statement was not made freely and voluntarily, just as he alleged in his previously filed, but never ruled upon, motions to suppress.
On appeal, the defendant is limited to the grounds he articulated at trial and may not raise a new basis for the claim on appeal, even if it would be meritorious. State v. Moody, 11-343 (La.App. 5 Cir. 12/28/11), 83 So.3d 1107, 1111; State v. Veals, 07-605 (La.App. 5 Cir. 1/22/08), 977 So.2d 1030, 1038, writ denied, 08-571 (La.11/26/08), 997 So.2d 543 (citing State v. Jackson, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, 911, writ denied, 05-1740 (La.2/10/06), 924 So.2d 162).
In Jackson, supra at 910-11, the defendant filed two motions to suppress statement on the grounds that they were made under fear, duress, threats or promises, and that he was not advised of his rights. The trial court denied the defendant’s motions. Id. at 911. For the first time on appeal, the defendant argued that he was unable to provide a voluntary statement because of his age, education, and due to sleep deprivation. Id. at 910-11. This Court found that since “defendant has raised these new bases for suppression for the first time on appeal, they [were] not properly before this Court.” Id. at 911.
121 In this case, the record shows that defendant filed two motions to suppress his confession based upon the grounds he now urges on appeal-neither of which were ever ruled upon prior to trial. While we note that defendant filed a motion in li-mine on April 1, 2013 seeking to exclude his statements, neither that motion, nor the evidence presented at the hearing, alleged that his statements were involuntary because of sleep deprivation, fear, duress, intimidation, menaces, threats, inducements or promises. Rather, his motion in limine only sought to exclude his confession on the basis that his statements were highly prejudicial and not pertinent. Because there is no evidence in the record *956 indicating that defendant raised this argument at trial, or sought a ruling thereon prior to trial, we find that defendant is not entitled to review of this issue, as it is not properly before this Court.
Nevertheless, we find that the State has demonstrated that defendant’s confession was free and voluntary and not the product of fear, duress, intimidation, menace, threats, inducements, or promises in accordance with La. R.S. 15:451. State v. Blank, 04-204 (La.4/11/07), 955 So.2d 90, 103, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). If a statement is a product of custodial interrogation, the state must additionally show that the person was advised before questioning of his right to remain silent; that any statement he makes may be used against him; and that he has a right to counsel, either retained or appointed. Blank, supra.
A trial court’s finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not. supported by the evidence. Id. Credibility determinations lie within the sound discretion of the trial court and its ruling will be not be disturbed unless clearly contrary to the evidence. ' Id. Testimony of the interviewing police officer alone may be sufficient proof that a |22defendant’s statements were freely and voluntarily given. Moody, supra. When deciding whether 'a statement is knowing and voluntary, a court considers the totality of the circumstances under which it is made, and any inducement is merely one factor in the analysis. Blank, supra.
In the present case, the record reflects that defendant was interrogated by various officers at the Major Crimes Office for more than seven hours between approximately 9:30 p.m. and 5:00 a.m. The record further reflects that the officers administered Miranda warnings to defendant on at least eight occasions, including prior to arrest, prior to questioning at the Major Crimes Office, and when defendant executed three different waiver of Miranda rights forms, and three different taped statements forms, indicating that he understood and waived his rights, and was willingly making a statement.
Lieutenant Cox and Lieutenant Mclain both testified at trial regarding the circumstances surrounding defendant’s statements and explained that defendant was also orally advised of his rights once the recordings began, and that he indicated that he understood his rights. Lieutenant Cox and Lieutenant Mclain both testified that defendant was not coerced, threatened or promised anything in exchange for providing his statement. In addition, Lieutenant Cox testified that he offered defendant restroom breaks and food and water, which defendant accepted.
Accordingly, we find that there is nothing in the record that suggests that the duration of the interrogation, without more, rendered defendant’s statement involuntary. Although defendant alleges in his brief that he was not- afforded a break, Lieutenant Cox testified that defendant was offered and accepted restroom and water breaks and food. Defendant failed to offer any evidence to the contrary. Credibility determinations lie within the sound discretion of the trial court. See Moody, supra at 1113. Also, defendant does not allege, and the evidence does not |23reflect, that he requested to terminate the interrogation. On the contrary, the State’s evidence shows that after Lieutenant Cox and Lieutenant Mclain chose to discontinue the interrogation, defendant requested to return to the interview room to continue to speak to the officers and to tell them everything. Under the totality of the circumstances of this' case, we find' that the State has demonstrated that de *957 fendant’s confession was free and voluntary as set forth in La. R.S. 15:451.

Assignment of Error Number Three:

In his third assignment of error, defendant contends that the State submitted inadmissible “other crimes” evidence to the jury in violation of the trial court’s grant of the State’s notice of intent to use other crimes evidence under La. C.E. art. 404(B) only as to defendant’s redacted confession or statement. Specifically, defendant argues that the State improperly submitted other crimes evidence of the robberies committed in Denham Springs, Walker, Covington and Slidell, through the testimony of Detective Varmall, Lieutenant McCormick, Lieutenant Cox and Lieutenant Mclain. Defendant asserts that this testimony was prohibited by the trial court’s pre-trial ruling regarding other crimes evidence because the State failed to meet its burden as to this evidence under La. C.E. art. 404(B).
However, our review of the record shows that defendant failed to properly preserve this issue for appellate review because he failed to lodge a contemporaneous objection to the testimony of Detective Varmall, Lieutenant McCormick, Lieutenant Mclain, or Lieutenant Cox at trial, or to request an admonition or mistrial pursuant to La.C.Cr.P. arts. 770 and 771.
In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. State v. Berroa-Reyes, 12-581 (La.App. 5 Cir. 1/30/13), 109 So.3d 487, 498 Inciting La. C.Cr.P. art. 841). The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem, and to prevent the defendant from gambling on a favorable verdict, and then, resorting to appeal on errors that might easily have been corrected by an objection. Id. A defendant is precluded from raising an error related to the State’s elicitation of other crimes evidence on appeal when the defendant failed to lodge a contemporaneous objection on this ground during trial as required by La.C.Cr.P. art. 841. Id. Under La.C.Cr.P. art. 841(A), “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” See also State v. Mitchell, 11-1018 (La.App. 5 Cir. 6/28/12), 97 So.3d 494, 498-99 (finding that the defendant failed to preserve for appeal the alleged error that testimony regarding unrelated pending charges against the defendant constituted impermissible references to other bad acts, where the defendant did not contemporaneously object to the testimony, nor did he request an admonition or mistrial).
Accordingly, as defendant did not contemporaneously object to the testimony of Detective Varmall, Lieutenant McCormick, Lieutenant Mclain, or Lieutenant Cox, we' find that these issues were not properly preserved for this Court’s consideration on appeal. See Mitchell, supra at 499; Berroa-Reyes, supra at 499-500.

Assignment of Error Number Four:

In his fourth assignment of error, defendant argues that a baseball cap was improperly published to, and considered by, the jury because the State never admitted the baseball cap into evidence.
Our review of the record shows that the baseball cap was marked as State’s exhibit 14, and that defendant made no objection when both Lieutenant LsMcCormick and Deputy Forrester identified State’s exhibit 14 as the baseball cap defendant was wearing at the time of his April 20, 2009 arrest. Defendant similarly failed to make any objection when the prosecutor referred to the baseball cap as having “been previously introduced as State’s Exhibit 14.” Fur *958 thermore, the record shows that when the prosecutor asked the clerk whether all of the State’s identified exhibits had been entered into evidence, the clerk responded affirmatively as to all exhibits, with the exception of the State’s exhibit 13. At that time, the record shows that defendant did not lodge any objection as to an alleged failure by the State to introduce the baseball cap into evidence. The State then asked the trial court for permission to publish all of the State’s evidence to the jury, at which point, defendant again failed to make any objection to the publication of the baseball cap, or to any other evidence.
Because the contemporaneous objection rule provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence, we find that defendant has failed to preserve this issue for appellate review. See La.C.Cr.P. art. 841.

Assignment of Error Number Five:

In his fifth assignment of error, defendant contends that his 297-year sentence is constitutionally excessive. Specifically, defendant argues that the imposition of three consecutive 99-year sentences, for a total of 297 years, shocks the sense of justice as he is not the worst kind of offender, did not commit the most serious violation, did not injure anyone, and had no convictions prior to the armed robberies. Defendant contends that his sentence was nothing more than a meaningless imposition of pain and suffering, and therefore, should be vacated.
As an initial matter, we note, and defendant acknowledges, that he is limited to a bare excessiveness claim because he failed to file a motion to reconsider _[2gsentence. State v. Gatewood, 12-281 (La.App. 5 Cir. 10/30/12), 103 So.3d 627, 639. Moreover, this Court has held that when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the bare constitutional excessive review, and the defendant is precluded from raising the issue on appeal. State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-409 (La.5/25/12), 90 So.3d 411. Accordingly, we find that because defendant failed to file a motion to reconsider sentence and failed to specifically object to the consecutive nature of his sentences, defendant is limited to a bare review of his sentences for unconstitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I; § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id. Generally, maximum sentences are reserved for cases involving the most serious violations of the .offense charged and the worst type of offender. State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, 239, writ denied, 01-2965 (La.10/14/02), 827 So.2d 414.
In the present case, defendant was convicted of three counts of armed robbery in violation of La. R.S. 14:64. Defendant’s convictions were punishable | j>7by imprison *959 ment at hard labor for not less than ten years and for not more than ninety-nine years, without the benefit of parole, probation, or suspension of sentence on each count. La. R.S. 14:64(B). Therefore, defendant’s sentences are within the applicable sentencing range. The imposition of a sentence, although within the statutory limits, may still violate a defendant’s constitutional right against excessive punishment. State v. Scie, 13-634 (La.App. 5 Cir. 1/15/14), 134 So.3d 9, 12.
In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentences imposed for similar crimes by other courts. State v. Page, 02-689 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 179. First, concerning the nature of the crime, the Louisiana Supreme Court has recognized that the crime of armed robbery “creates a great risk of emotional and physical harm.” State v. Celestine, 12-241 (La.7/2/12), 92 So.3d 335, 337 (per curiam). Further, this Court has recognized armed robbery as a “serious offense against the person.” State v. Bruce, 10-121 (La.App. 5 Cir. 11/9/10), 54 So.3d 87, 97, writ denied, 10-2756 (La.4/29/11), 62 So.3d 109.
Here, the record reflects that defendant threatened multiple victims with a box cutter during the commission of the robberies. Also, one victim, Ms. Pichoff, testified that she was so nervous that she was unable to remember the password to open the register. Second, regarding the nature and background of the offender, although defendant asserts that these crimes were a first offense, the record reflects that defendant was persistently involved in similar offenses in multiple jurisdictions including St. Tammany, Livingston, and Tangipahoa parishes, and that defendant had already been convicted of the armed robberies in St. Tammany Parish at the time of sentencing. Furthermore, defendant’s confession reflects that Lshe had previously violated a domestic restraining order, and had a second degree battery conviction.
Finally, regarding sentences imposed for similar crimes by this Court and other courts, a review of the jurisprudence reveals that imposed sentences of ninety-nine years or greater upon defendants convicted of armed robbery have been previously upheld in many cases in which the victims were not physically injured. See Bruce, supra at 95-98 (where this Court found that the trial court did not abuse its discretion in imposing a 100-year sentence, despite the defendant’s argument that no one was injured); see also Page, supra at 178-80 (although no one was harmed during the armed robberies, this Court found that the defendant’s aggregate 485-year sentence, which included ninety-nine years imprisonment on each of four counts of armed robbery, was “not constitutionally excessive”).
Given the facts of this case and the similar sentences in the above-cited cases, we may find that defendant’s sentences are not grossly disproportionate, do not impose needless and purposeless pain and suffering, and do not shock the sense of justice. Accordingly, we find that defendant’s sentences are not unconstitutionally excessive, and the trial court did not abuse its discretion in the imposition of defendant’s sentences.

Pro Se Assignment of Error Number Six:

In his sole pro se assignment of error, defendant contends that the trial court improperly refused to suppress evidence seized pursuant to his alleged unlawful initial stop, arrest, and pat-down search. Specifically, defendant argues that the arresting officers, Lieutenant McCormick and Deputy Forrester, did not have reasonable suspicion of criminal activ *960 ity, probable cause to arrest him, or an articulable belief that they were in danger to justify the pat-down search. Defendant argues that any evidence seized constitutes fruit of the poisonous tree, | ¡^including defendant’s statements made in custody, and therefore should not have been admitted.
Initially, we note that for the first time on appeal, defendant argues that the officers did not have a reasonable belief that they were in danger so as to justify the pat-down search, and that his statements should have been suppressed under the fruit of the poisonous tree doctrine due to an illegal arrest. Because a defendant is limited on appeal to the grounds he articulated at trial and may not raise a new basis for the claim on appeal, these issues are not properly before this Court on appeal. State v. Suggs, 11-64 (La.App. 5 Cir. 12/13/11), 81 So.3d 815, 827, writ denied, 12-54 (La.4/10/12), 85 So.3d 1269. Rather, the only reviewable issue is whether the officers had reasonable suspicion to justify the initial stop.
A police officer may conduct a warrantless investigatory stop of a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense. La. C.Cr.P. art. 215.1(A); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The use of handcuffs does not necessarily elevate a detention to an arrest. State v. Turner, 12-855 (La.App. 5 Cir. 5/16/13), 118 So.3d 1186, 1192. To show that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, the state must show some fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing the law enforcement officers, the public, or the suspect himself to an undue risk of harm. Id. The trial court’s denial of a motion to suppress is afforded great weight and its ruling will not be set aside unless there is an abuse of discretion. Id.
During the July 22, 2013 hearing on defendant’s motion for probable cause for initial stop and arrest, Lieutenant McCormick testified that on the day of laodefendant’s arrest, he was investigating a string of robberies of GameStop stores in St. Tammany Parish. He was given a description of a suspect, identified as a black male wearing a dark colored hat, grey sweatpants and a backpack, who was robbing GameStop stores while armed with a box cutter, near the stores’ closing time. Lieutenant McCormick also testified that the suspect drove a white Monte Carlo.
On the night of defendant’s arrest, he and Deputy Forrester set up surveillance of the GameStop in Mandeville. He testified that he observed a subject, later identified as defendant, walking between the GameStop and another building close to closing time, and peering into the GameS-top. Lieutenant McCormick described the subject as a tall African American male, wearing a dark hat, grey sweatpants and a backpack. He observed defendant step back into the dark when defendant saw a customer exit the store. Lieutenant McCormick described this behavior as suspicious activity. He testified that when defendant saw him after his Nextel phone lit up, defendant gave a “deer in headlights” expression and turned and walked away from him. Deputy Forrester stopped defendant, and as Lieutenant McCormick approached them, he witnessed defendant shifting, as if he was going to give a fight or flight response. At that point, Lieutenant McCormick placed handcuffs on defendant and read him his Miranda rights.
The trial court denied defendant’s motion for probable cause for initial stop and *961 arrest, finding that based on the totality of the circumstances, the State had shown reasonable suspicion to justify the stop and arrest, as a result of defendant’s similarities to the suspect’s description, the fact that defendant acted as if he did not want to be seen, and the fact that defendant showed up at the scene near the store’s closing time. Considering the foregoing evidence, we find no abuse of |S1 discretion in the trial court’s ruling. Moreover, because the arresting officers were aware that the suspect they were looking for carried a box cutter and defendant exhibited signs of a “fight or flight” response, we find that the State has shown that the officers were justified in handcuffing defendant. Accordingly, we find this assignment of error to be without merit.

Errors Patent Review:

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review reveals that the trial judge did not advise defendant of the two-year prescriptive period for filing an application for post-conviction relief under La.C.Cr.P. art. 930.8. Accordingly, we advise defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La.C.Cr.P. arts. 914 or 922. See State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272.
Furthermore, our review also reveals an error in the “State of Louisiana Uniform Commitment Order.” The Uniform Commitment Order reflects the incorrect date, September 4, 2013, as the date of adjudication. Accordingly, to ensure an accurate record, we remand this case and order the Uniform Commitment Order to be corrected to reflect the correct adjudication date, July 24, 2013. We further direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the | ^Department of Corrections’ Legal Department. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142, citing La.C.Cr.P. art. 892(B)(2).
CONCLUSION
Accordingly, for the foregoing reasons, we affirm defendant’s convictions and sentences for three counts of armed robbery in violation of La. R.S. 14:64. The matter is remanded to the trial court for correction of an error patent as noted herein, and the Clerk of Court for the 24 Judicial District Court is ordered to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ Legal Department.

CONVICTIONS AND SENTENCES AFFIRMED: REMANDED FOR CORRECTION OF COMMITMENT.

. The original bill of information listed the first name of the victim in count three as “David.” However, the bill of information was later amended to correct the victim’s first name to "Daniel.”

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. State v. Prieur, 277 So.2d 126 (La.1973).