STATE OF LOUISIANA

VERSUS

JEREL SMITH

NO. 19-KA-395

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 17,30, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING


March 13, 2020


**MARC E. JOHNSON**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Hans J. Liljeberg


**CONVICTIONS AND SENTENCES AFFIRMED;**
**ENHANCED SENTENCE VACATED;**
**REMANDED FOR CORRECTION OF**
**UNIFORM COMMITMENT ORDER;**
**MOTION TO WITHDRAW GRANTED**
    **MEJ**
    **SMC**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
        Joel T. Chaisson, II
        Louis G. Authement

COUNSEL FOR DEFENDANT/APPELLANT,
JEREL SMITH
        Bruce G. Whittaker

**JOHNSON, J.**

On appeal, Defendant, Jerel Smith, seeks error patent review of his convictions for armed robbery and second degree murder. Defendant's appointed appellate counsel filed an *Anders*[1] brief asserting there are no non-frivolous issues to raise on direct appeal.[2] For the following reasons, we affirm Defendant's convictions, the sentence for second degree murder, and his underlying sentence for the armed robbery conviction. The enhanced sentence for the armed robbery conviction is vacated and the matter is remanded for correction of the Uniform Commitment Order (UCO). Additionally, we grant appellate counsel's motion to withdraw.

*FACTS AND PROCEDURAL HISTORY*

At trial, through the testimony of various witnesses and video surveillance footage, the State established that Ryan Dubuc was on his way to work as an electrician at Cornerstone Evonik when he stopped at Birdie's Gas Station, ("Birdie's") at 13217 River Road in Luling, Louisiana shortly before 6:00 a.m. on the morning of January 9, 2017. Mr. Dubuc wore a blue uniform and drove a GMC Sierra truck. Defendant, Jerel Smith, asked Mr. Dubuc for a ride as Mr. Dubuc was leaving the store. Mr. Dubuc went back inside of the store to ask the store clerk if he knew Defendant. The store clerk indicated that he knew Defendant as a customer of the store. Mr. Dubuc and Defendant left Birdie's in Mr. Dubuc's truck. Birdie's video surveillance captured Mr. Dubuc's truck passing by the store in the opposite direction about four minutes later.

On the morning of January 9, 2017, Richard Rome, who works for Curtis Environmental water treatment plant, was traveling to the St. Charles Parish waste

---

[1] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] Defendant then filed a motion to file a supplemental *pro se* brief, which was granted. To date, that brief has not been received by this Court.

water treatment plant located at 628 Highway 3160 in Hahnville to pick up samples for analysis when he thought he saw "road kill" on the side of the road. After leaving the plant, Rome investigated and discovered a body at a bend in the road on the bank of the canal with a "safety-type" suit on. He returned to the plant to get assistance from one of the plant operators, who had his supervisor call 911 at approximately 9:40 a.m.

Sgt. Jeremy Pitchford of the St. Charles Parish Sheriff's Office (SCPSO) was called to the scene to investigate. He learned that the victim, Ryan Dubuc, would often stop at Birdie's Gas Station in Luling on his way to work. Sgt. Pitchford recalled seeing a "black male sitting in the corner of the [Birdie's] parking lot talking to someone" on his way home from the gym earlier that morning. Sgt. Pitchford became suspicious so he circled back around to get a better look, but once he returned to the gas station the man was gone. Sgt. Pitchford could not identify the man he saw, but recalled that he was black and wearing a greenish-colored long-sleeved shirt, sweater, or jacket. Later, Sgt. Pitchford viewed surveillance camera footage from Birdie's and confirmed that Mr. Dubuc had been there that morning and made an ATM withdrawal at 5:52 a.m. while at the store. The video also showed Mr. Dubuc exit the store and re-enter the store, to only exit again with the store clerk. The store clerk looked over to the person by the corner of the parking lot, he and Mr. Dubuc had a short conversation, and then the store clerk went back inside the store. While watching the video, Sgt. Pitchford saw his own sheriff's office unit drive by while the man and Mr. Dubuc talked and then walked off towards Mr. Dubuc's truck. Sgt. Pitchford saw his unit drive by again while Mr. Dubuc and the man got inside of the truck. The sergeant could not see the face of the man with Mr. Dubuc, but he could see the greenish shirt and gloves on the video. The video was played for the jury in open court, without objection.

Sgt. Pitchford testified that he spoke to the store clerk on the video as a part of his investigation. The store clerk viewed the video and told Sgt. Pitchford that Mr. Dubuc had asked him to come take a look at the person in the corner asking him for a ride. The store clerk told Mr. Dubuc that he did know the person as a customer of the store. The store clerk later positively identified a photograph of Defendant, Jerel Smith, as the person he saw in the parking lot that morning get into the truck with Mr. Dubuc. Sgt. Pitchford later took Defendant into custody and noted Defendant said nothing while in transit, but observed that Defendant "visibly, just like, [] looked defeated" when Defendant observed Mr. Dubuc's truck in the police garage.

Mohamad Abdallah, the store clerk, testified that Mr. Dubuc came into Birdie's around 5:30 a.m. on January 9, 2017, while he was working the night shift at the store. He recalled that Mr. Dubuc was a relatively new customer that he would see at the store every couple of days. Mr. Abdallah testified that he went outside with Mr. Dubuc after Mr. Dubuc had asked if he knew the man outside asking for a ride to work. Mr. Abdallah told Mr. Dubuc that he knew the man from the store and testified that Defendant had been a customer for approximately a year and he came into the store two to four times a week. Mr. Abdallah described the man who he saw that morning to detectives as being a black male in his late twenties to mid-thirties, six feet two or three inches tall, with a little "goatee" or "stubble." While on the witness stand, Mr. Abdallah identified Defendant as the man he saw talking to and leaving with Mr. Dubuc that morning.

SCPSO Sgt. Brad Walsh testified that he obtained surveillance video taken on January 9 – 10, 2017 from a homeowner at the corner of Grant Street and Lee Drive in LaPlace's Belle Pointe subdivision. Clips of this video were also played for the jury. On that video Sgt. Walsh observed Mr. Dubuc's truck drive onto a dirt road going into an adjacent cane field, make a left, and disappear out of view.

A short time later, the video shows a black man walking down Lee Drive towards Grant Street, cross Grant Street, and then walk out of view. Sgt. Walsh testified that the male was wearing blue jeans and a greenish hooded sweatshirt.

Detective Christie Chauvin of the St. John's Parish Sheriff's Office (SJPSO) testified that she received a call from SCPSO asking her to review surveillance video captured by St. John Parish's parish-wide crime camera system for the victim's vehicle, a bluish gray GMC extended cab pickup truck, on January 9, 2017 from 6:30 to 7:00 a.m. Det. Chauvin did observe the victim's vehicle on the video obtained from the crime cameras prior to it being left in the Belle Pointe subdivision. Det. Chauvin observed the truck traveling in Garyville on Highways 54 and 61 and she noted that it looked like the windows of the vehicle were down. At 6:59 a.m., the cameras captured the truck traveling towards LaPlace on Highway 61 east. At 7:08 a.m., the truck turned into Belle Pointe subdivision. SCPSO contacted Det. Chauvin again on January 13, 2017 and asked her to look for a green Nissan Armada. The detective also observed that car on their system's video at 10:54 a.m. on the morning of January 9, 2017 and noted that it exited the subdivision the same way it had entered.

Jaraielle Taylor, Defendant's friend, testified that she picked Defendant up at a house on Belle Pointe Drive in LaPlace the morning of January 9, 2017 to transport him to Mississippi for a court date. She noted that Defendant was wearing a white shirt and grey sweatpants and black shoes and carrying a "greenish-gray" jacket. Defendant drove Ms. Taylor's Nissan Armada to a trailer in Killona. Ms. Taylor testified that Defendant took what "looked like a gun" into the trailer, but Defendant denied having a gun when she asked. Next, Defendant stopped by his house to change his clothes and then the pair continued on to Mississippi. Ms. Taylor identified for the jury a pair of black shoes as those Defendant wore when she picked him up that morning.

SCPSO Deputy Jason Troxler, a crime scene technician, testified that he went to multiple locations to collect evidence and take photographs. Deputy Troxler took samples of blood and shattered glass from the locations where the victim's body and truck were found. Two copper projectiles and an empty leather wallet were also recovered from the truck. From Defendant's house at 1034 Luling Estates Drive, SCPSO recovered black Nike shoes with mud on the bottom and a cell phone from the front yard. SCPSO received a tip and Deputy Troxclair recovered a Rossi .38 special revolver with a wooden grip inside a paper bag from underneath a building at a public playground in Killona.

At trial, Dirk Summers testified that he lived in Killona and knew Defendant for more than ten years. Mr. Summers told the jury that Defendant woke him up between 6:00 and 6:30 a.m. on the morning of January 9, 2017 to purchase sixty dollars' worth of cocaine. Mr. Summers testified that Defendant returned later with a female in a greenish colored SUV. He said that Defendant was not acting like himself and wanted to sell him a weapon, which Defendant had wrapped in a black shirt. Defendant traded the weapon, an unloaded black .38 revolver with a brown handle, for cash and cocaine. Mr. Summers had a home surveillance system, which captured his interactions with Defendant that day. Video clips from Mr. Summers's surveillance system were also shown at trial. Mr. Summers said that he showed the weapon to his friends later that evening. On January 11, 2017, Mr. Summers observed several police cars at his home on his system's video display. Mr. Summers left to avoid interacting with the police because he did not want them to find the drugs and weapons inside of his home. Once he learned of Defendant's arrest and figured that the police came to his house for the gun, Mr. Summers made arrangements to turn the weapon over to the police because he had nothing to do with the murder. He wiped his fingerprints off the gun, put it in a paper bag, left it underneath the restroom area of a park in Killona and called the

police immediately afterwards. Mr. Summers was charged with twelve offenses related to the search of his residence but, because he cooperated in the instant case, the charges against him were dismissed.

Through the testimony of other witnesses, the State explained how SCPSO worked with other entities to solve the crime. Police determined Defendant's probable movements on January 9, 2017 and confirmed what they had seen on surveillance footage by using Defendant's T-Mobile USA cell phone records which included logs of signals sent between Defendant's phone and various cell phone towers in St. Charles Parish and St. John Parish. Jefferson Parish Assistant Coroner and Chief Forensic Examiner, Dr. Dana Troxclair, testified that the manner of death was homicide, because the victim had four gunshot wounds to the head and three of the shots had been fired at close range. Dr. Troxclair thought that the victim had been "dragged across something" and stated that the body was not decomposed, consistent with being found a few hours after death. Police crime lab personnel testified that the bullets found in the front passenger door of the GMC truck were fired by the weapon Dirk Summers helped police recover and that the DNA profile of the blood on Defendant's left shoe was consistent with the victim's DNA profile.

The State concluded their case in chief with SCPSO Detective Thomas Plaisance, who led the investigation. Det. Plaisance recalled that Defendant was advised of his rights and waived them before making a statement. Jurors viewed portions of the videotaped statement in open court. Det. Plaisance testified that the Defendant never admitted guilt, but did say that he was ready to go to jail because that is where he belonged when shown a picture of the weapon Dirk Summers gave the police.

At the end of the fifth day of trial, Defendant was found guilty by a unanimous jury of twelve of one count of second degree murder and one count of armed robbery, in violation of La. R.S. 14:30.1 and 14:64, respectively.

On June 14, 2018, Defendant was sentenced to life imprisonment at hard labor for the second degree murder conviction and ninety-nine years for the armed robbery conviction plus an additional five year penalty, to run consecutively, because of the use of a firearm in commission of the armed robbery, all without benefit of parole, probation, or suspension of sentence.

*ASSIGNMENT OF ERROR*

Through his *Anders* brief, Defendant requests that this Court perform an error patent review of the record and reverse his sentences and convictions.

*ANDERS BRIEF*

In his brief, appointed counsel asserts that he has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Using the procedure adopted by this court in *State v. Bradford*, 95-929 (La. App. 5 Cir. 6/25/96); 676 So.2d. 1108, 1110, appointed appellate counsel for Defendant filed a motion to withdraw as counsel of record pursuant to *Anders*, *supra*, and *State v. Jyles*, 96-2669 (La. 12/12/97); 704 So.2d 241 (per curiam).

In *Anders,* the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds his case to be wholly frivolous after a conscientious examination of it.[3] The request must be accompanied by "a brief referring to anything in the record that might arguably support the appeal" so as to provide the reviewing court "with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability" and to assist the reviewing court

---

[3] The United States Supreme Court most recently reaffirmed its position in *Anders* in *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed. 2d 756 (2000).

"in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." *McCoy* v. *Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 439; 108 S.Ct. 1895, 1902; 100 L.Ed. 2d 440 (1988).

In *State* v. *Jyles, supra*, the Louisiana Supreme Court stated that an *Anders* brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The Lousiana Supreme Court explained that an *Anders* brief must demonstrate by full discussion and analysis that appellate counsel "has cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Id.*

When conducting a review for compliance with *Anders,* an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. *State* v. *Bradford, supra*. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel's motion to withdraw and affirm the defendant's conviction and sentence. *Id.* However, if the court finds any legal point arguable on the merits, the court may deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the court, or grant the motion and appoint substitute appellant counsel. *Id.*

### *DISCUSSION*

Appellate defense counsel urges that he could find no non-frivolous issues to raise on appeal, after a detailed review of the record. Appellate counsel notes that trial counsel did not file motions to suppress the evidence or Defendant's statement and that "under the circumstances, the question remains whether there is an appealable issue concerning the seized evidence and recorded statement." The

State presented evidence, including a bloody shoe seized from Defendant's residence pursuant to a search warrant and excerpts from a video of Defendant's statement. Appellate counsel avers that although the statement did not amount to an explicit direct confession, its admission and other content was "extremely damning evidence" as the State also concluded in their response to this appeal. Appellate counsel admits that there is no basis upon which to raise a suppression issue in this direct appeal, as the issue was not preserved in the trial court, but contends that there may be a related ineffective assistance of counsel claim that could be addressed in post-conviction proceedings.

Appellate counsel also notes that trial counsel filed a motion for new trial wherein counsel alleged that the trial court erred in denying his challenge for cause to juror, Rhonda Berthelot, "who stated she was both a first cousin of the District Attorney, and was sympathetic to the victim in the case." Trial counsel argued that the trial court erroneously denied a challenge for cause to the juror thus requiring him to exercise a peremptory challenge. Appellate counsel admits that to prevail on appeal, a defendant must demonstrate both the erroneous denial of his challenge for cause and the use of all of his peremptory challenges. Trial counsel exercised eleven of his twelve peremptory challenges. Because trial counsel did not exhaust Defendant's peremptory challenges, there is no non-frivolous issue to be raised regarding the denial of the challenge for cause or the related denial of the motion for new trial.

Next, appellate counsel points out that the trial court imposed the mandatory sentence of life imprisonment at hard labor for the second degree murder conviction and that it also imposed the maximum sentence for the armed robbery with a firearm conviction of ninety-nine years with five years to run consecutively. Defendant's armed robbery sentence is running concurrently with the life sentence. Counsel contends that, although the sentence on the armed

robbery conviction is extreme, under the circumstances of this case, it does not appear to be constitutionally excessive.

Lastly, appellate counsel concludes that the indictment appears to be in order, the minutes indicate that defendant was present with counsel for all critical court proceedings, the jury was composed of the proper number of members, the verdicts were supported by unanimous vote, delays were waived between the denial of the motion for new trial and imposition of sentences, and the sentences imposed are legal.

The State responds that a review of the record supports the conclusion that there are no non-frivolous issues to raise on appeal and appellate counsel has thoroughly and accurately reviewed and summarized the record in his brief. The State urges that there is no indication in the record or otherwise to support suppression of any evidence or any portion of Defendant's taped statement, even if motions to suppress had been filed by defendant's trial counsel. The State points out that the "most damning physical evidence" was the victim's blood on Defendant's shoe, which was seized pursuant to a lawfully issued search warrant. The State also asserts that Defendant was properly advised of his rights and there is no evidence to support the contention that the statement was not freely and voluntarily made, or that it was induced by threats, promises, or coercion.

Likewise, the State declares that there was no error committed when the trial court denied Defendant's challenge for cause relating to juror, Rhonda Berthelot. The State asserts that the record clearly reflects that Ms. Berthelot stated that she did not socialize with the District Attorney and that her affiliation with him would not impact her ability to be fair and impartial. The trial court concluded that Ms. Berthelot rehabilitated herself. The State asserts that it was not improper for the trial court to deny counsel's challenge for cause and notes the denial did not result in the exhaustion of defendant's peremptory challenges.

With respect to the sentences, the State argues that Defendant's life sentence was mandated by law and that the facts and circumstances of this case justify the ninety-nine-year sentence for armed robbery and the additional five years for the use of a firearm during the offense. The State notes that no motion to reconsider sentence was filed. The State maintains that the bill of indictment properly charged Defendant, the minute entries indicate that defendant appeared at each stage of the proceedings, trial counsel filed a motion to suppress his identification that was properly denied, the jury composition was proper, and the jury's verdicts do not present any issue that would support an appeal.

Appellate counsel has filed a motion to withdraw as attorney of record as he filed an *Anders* brief and advised defendant of his right to file a *pro se* brief in this appeal. Additionally, this Court sent defendant a letter by certified mail informing him that an *Anders* brief had been filed and that he had until October 21, 2019, to file a *pro se* supplemental brief. Defendant's motions for a copy of the record, and an extension to file his supplemental brief were granted but, to date, this Court has not received a brief from Defendant.

*LAW AND ANALYSIS*

An independent review of the record supports appellate counsel's assertion that there are no non-frivolous issues to be raised on appeal.

The record reflects that Defendant appeared at each stage of the proceedings against him, including his arraignment, trial, and sentencing. Thus, Defendant was present at all relevant stages and there are no issues that would support an appeal. In addition, the indictment properly charged Defendant, plainly and concisely stated the essential facts constituting the charged offenses, and sufficiently identified Defendant and the crimes charged. *See* La. C.Cr.P. arts. 464 and 466. Further, the jury composition was proper and the jury's verdicts do not present any issue that would support an appeal.

Defendant filed several pre-trial motions and memoranda, including a Motion to Preserve Evidence that was granted; a *pro se* Motion to Remove Counsel of Record that was denied; a Motion in Limine relative to autopsy photographs which led to a Joint Stipulation on Admissibility of Autopsy Photographs; and an opposition to the State's request to introduce Louisiana Code of Evidence art. 404(B) evidence, which the State later withdrew. Other than the denial of the motion to remove counsel, the motions were resolved in favor of Defendant. Nothing in the record indicates that the trial court abused its discretion in denying the motion to remove counsel.

Defense counsel also filed a Motion to Suppress Photo Lineup and Identification of Defendant by Mr. Abdallah that was denied after a hearing. A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. A trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of that discretion. *State v. Sam*, 11-469 (La. App. 5 Cir. 2/14/12); 88 So.3d 580, 586, *writ denied*, 12-0631 (La. 9/12/12); 98 So.3d 301. In determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. *Id.*

Generally, a defendant has the burden of proof on a motion to suppress an out-of-court identification. *State v. Bradley*, 11-1060 (La. App. 5 Cir. 9/25/12); 99 So.3d 1099, 1105, *writ denied*, 12-2441 (La. 5/3/13); 113 So.3d 208. Defendant must first prove that the identification procedure was suggestive. *Id.* An identification procedure is considered suggestive if the attention of the witness is unduly focused on the defendant during the procedure. *Id.* at 1106. If the defendant succeeds in establishing that the identification procedure was

suggestive, the defendant must then show there was a substantial likelihood of misidentification as a result of the identification procedure. *Id.* It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. *Id.*

After reviewing the motion to suppress identification and the transcript of the hearing on that motion, we find that the trial court did not abuse its discretion in denying that motion. The store clerk told Mr. Dubuc that he recognized Defendant as a frequent customer, was able to accurately describe Defendant to the police when asked, and later identified Defendant's picture after viewing approximately forty photos of other subjects of investigation. The record shows that the identification process was not suggestive and that there was not a substantial likelihood of misidentification.

A review of the record, considering *State v. Raymo*, 419 So.2d 858, 861 (La. 1982), shows that the evidence presented was sufficient under the *Jackson*[4] standard to establish the essential statutory elements of second degree murder[5] and armed robbery.[6] Birdie's store clerk positively identified Defendant as the individual whom the victim left with at approximately 6:00 a.m. on the morning of January 9, 2017. The victim's blood was found on defendant's shoe, which was retrieved from defendant's residence pursuant to a search warrant. Defendant sold the firearm used in the murder to Dirk Summers in exchange for cash and cocaine. Video surveillance placed the truck at various locations in St. Charles and St. John the Baptist parishes (including the location in LaPlace

---

[4] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979).

[5] As part of its instructions, the jury was given La. R.S. 14:30.1(A)(1), which provides: Second degree murder is the killing of a human being [ w]hen the offender has a specific intent to kill or to inflict great bodily harm.

[6] Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.

where the truck was eventually abandoned) consistent with witnesses' statements and testimony. On one videotape, Sergeant Walsh observed a black man, wearing a greenish hooded sweatshirt, walking in the area where the victim's truck was later discovered. Defendant's cell phone records also placed Defendant in the same areas where the crimes occurred. Also, Det. Plaisance testified that when they showed Defendant pictures of the gun given to them by Mr. Summers, Defendant said he was ready to go to jail because that was where he belonged. Considering the foregoing, we find that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that the evidence was more than sufficient to find Defendant guilty of second degree murder and armed robbery beyond a reasonable doubt. The evidence presented was more than sufficient, applying the *Jackson* standard, to support Defendant's convictions.

Also, Defendant's sentences do not appear to present issues for appeal. Defendant's sentences fall within the sentencing ranges prescribed by the statutes. *See* La. R.S. 14:30.1(B); La. R.S. 14:64. Further, defendant's sentences do not appear excessive, and the record supports the sentences received.[7] The victim's intention was to be helpful and give Defendant a ride to work, but Defendant shot the victim in the head four times shortly after they pulled away from the store. Given the violent and callous nature of Defendant's crimes, we find that the sentences imposed neither shock the sense of justice nor constitute a purposeless infliction of pain and suffering.

---

[7] This Court has upheld ninety-nine-year sentences for defendants who were convicted of armed robbery. *See State v. Falkins*, 04-250 (La. App. 5 Cir. 7/27/04); 880 So. 2d 903; *State v. Reaux*, 14-215 (La. App. 5 Cir. 11/25/14); 165 So. 3d 944, *writ denied*, 14-2639 (La. 10/9/15); 178 So. 3d 1000. This Court has also upheld mandatory life sentences for defendants who were convicted of second degree murder. *See State v. Francois*, 17-471 (La. App. 5 Cir. 3/14/18); 242 So. 3d 806; *State v. Bonilla*, 15-529 (La. App. 5 Cir. 2/24/16), 186 So. 3d 1242, *writ denied*, 16-0567 (La. 5/2/16); 206 So. 3d 881, *cert. denied*, - -U.S. - - , 137 S.Ct. 239, 196 L.Ed. 2d 183 (2016) (where the defendant intentionally shot an unarmed man in the head at close range).

However, we find that the trial judge erred by enhancing defendant's armed robbery sentence under La. R.S. 14:64.3. That statute provides for an additional period of five years imprisonment without benefit of parole, probation, or suspension of sentence, to be served consecutively to the sentence imposed by La. R.S. 14:64 when the weapon used in the commission of the crime of armed robbery is a firearm and the State provides written notice of its intention to seek enhancement of the sentence under that statute, or includes the enhancement in the indictment. Here, the State failed to provide written notice and include the enhancement in the indictment. *See State v. Robinson*, 06-464 (La. App. 5 Cir. 12/12/06); 947 So.2d 783, where this Court found that the trial judge erred in enhancing the defendant's sentence under La. R.S. 14:64.3 when the State did not file written notice that it intended to seek enhancement of the sentence under La. R.S. 14:64.3, or charge the defendant with a violation of that statute in the Bill of Information. Accordingly, we vacate Defendant's five-year sentence enhancement and remand for correction of the Uniform Commitment Order.

*ERRORS PATENT REVIEW*

The record also was reviewed for errors patent, according to Louisiana Code of Criminal Procedure art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). In addition to finding the trial court erred by sentencing Defendant to a five-year sentence enhancement, one additional error was noted.

Trial transcripts show that Defendant was not advised by the trial court of the time period for seeking post-conviction relief as required by Louisiana Code of Criminal Procedure art. 930.8. If a trial court fails to inform, or completely inform the defendant, pursuant to that article, this Court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *See State v. Perez*, 17-119 (La. App.

5 Cir. 8/30/17); 227 So.3d 864. Accordingly, Defendant is advised that he has two years after the judgment of conviction and sentence become final to seek post-conviction relief. *State v. Pinner*, 19-158, 2019 WL 5417728 (La. App. 5 Cir. 10/23/19).

## *DECREE*

For the foregoing reasons, we affirm Defendant's convictions, the sentence for second degree murder, and the underlying sentence for the armed robbery conviction. The enhanced sentence for the armed robbery conviction is vacated and the matter is remanded to the Twenty-Ninth Judicial Court for correction of the Uniform Commitment Order (UCO). Further, appellant counsel's motion to withdraw as attorney of record is granted.

**CONVICTIONS AND SENTENCES AFFIRMED;
ENHANCED SENTENCE VACATED;
REMANDED FOR CORRECTION OF
UNIFORM COMMITMENT ORDER;
MOTION TO WITHDRAW GRANTED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 13, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-KA-395

### E-NOTIFIED
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
LOUIS G. AUTHEMENT (APPELLEE)

### MAILED
BRUCE G. WHITTAKER (ATTORNEY)
LOUISIANA APPELLATE PROJECT
1215 PRYTANIA STREET
SUITE 332
NEW ORLEANS, LA 70130

HON. JOEL T. CHAISSON, II (ATTORNEY)
TWENTY-NINTH JUDICIAL DISTRICT
COURT
POST OFFICE BOX 680
HAHNVILLE, LA 70057